CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br> v. <br> KINGJOHN BAYLON ASUNCION, <br>     Defendant. | CASE NO. CR 21-460 CRB <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Date: August 27, 2025 <br> Time: 10:00 a.m. <br> The Honorable Charles R. Breyer |

## I. INTRODUCTION

On January 3, 2020, defendant Kingjohn Baylon Asuncion traveled from Las Vegas to San Francisco to meet a 13-year-old girl he had been grooming for months over Snapchat and Instagram. By then, he had already persuaded her to send sexually explicit images and videos of herself. Once in San Francisco, despite her age, Mr. Asuncion engaged in multiple sexual acts with the victim.

This conduct, online enticement culminating in sexual conduct with a minor, is among the most serious crimes. It represents deliberate predation on a vulnerable child and has the potential to cause lasting harm. After considering the advisory Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a sentence of 130 months' imprisonment followed by a 20-year term of supervised release.

## II. FACTS

The Presentence Investigation Report ("PSR") describes the defendant's offense conduct in detail. On January 3, 2020, Victim 1, a 13-year-old girl, was reported missing in San Francisco by her mother after she failed to return from a medical appointment at Kaiser Permanente. PSR ¶ 7. Surveillance footage confirmed that Victim 1 exited the facility at approximately 3:24 p.m. and walked away from the area. *Id.*

Two days later, on January 5, 2020, Victim 1 was located with Kingjohn Baylon Asuncion at the Ferry Building in San Francisco. PSR ¶ 8. Both Mr. Asuncion and Victim 1 initially provided false names to law enforcement. *Id.* A search of Mr. Asuncion's backpack revealed five different cell phones, including one that belonged to Victim 1, along with other personal items of hers. *Id.* That evening, investigators collected pubic hair and a penile swab from Mr. Asuncion, while Victim 1 underwent a medical examination – Victim 1, however, declined to authorize use of her medical records for evidentiary purposes. PSR ¶ 9. Victim 1 later admitted to her aunt that she had engaged in sex with Mr. Asuncion, explaining that she did so willingly and that "he didn't do anything wrong." *Id.*

During a *Mirandized* interview, Mr. Asuncion stated that he first met Victim 1 through Snapchat in October 2019 and that they communicated daily through Snapchat, Instagram, and phone calls. PSR ¶ 10. He explained that Victim 1 initially told him she was 18 years old, but he later realized she was underage, estimating she was about 16 and knowing she was in high school. PSR ¶ 11. Despite recognizing her minor status, Mr. Asuncion developed a romantic relationship with her and continued their sexual communications. PSR ¶¶ 11–12. He acknowledged that he traveled from Las Vegas to San Francisco by bus in order to meet her. PSR ¶ 10. Mr. Asuncion initially denied sexual contact but eventually admitted that he and Victim 1 engaged in various forms of sexual conduct. PSR ¶ 12. He further admitted that he asked Victim 1 to send him sexually explicit photos and videos prior to their meetup in San Francisco. *Id.*

Messages recovered from their Instagram communications confirmed Mr. Asuncion's awareness that Victim 1 was underage, including one message where he wrote, "If you were 18+ I'd pull out of for you but I can't risk it." PSR ¶ 13. Additional chat logs demonstrated the sexual nature of their interactions. On multiple occasions, he requested explicit images and videos, which Victim 1 provided,

including videos of herself engaging in masturbation and photographs of her breasts and buttocks. PSR ¶¶ 15-16.

In his plea agreement, Mr. Asuncion admitted that he used Instagram to knowingly persuade and entice Victim 1 to engage in the production of child pornography. PSR ¶ 18. He further admitted that their online communications culminated in Victim 1 leaving her family during a San Francisco trip to meet him, and that after he traveled from Las Vegas to San Francisco, they engaged in multiple instances of sexual activity. *Id.*

### III.   SENTENCING GUIDELINES CALCULATIONS AND RECOMMENDED SENTENCE

The government concurs with Probation's calculation of the applicable Guidelines in this case. Under U.S.S.G. § 2G2.1(a), the base offense level is 32. A two-level enhancement applies because the victim was under 16 years old, pursuant to § 2G2.1(b)(1)(B). An additional two-level enhancement applies for the commission of a sexual act under § 2G2.1(b)(2)(A), and another two-level enhancement applies for the use of a computer under § 2G2.1(b)(6). These adjustments result in a subtotal offense level of 38. After a three-level reduction for acceptance of responsibility under § 3E1.1, the total offense level is 35. *See* PSR ¶¶ 25–36.

The government also agrees with Probation's finding that Mr. Asuncion has a criminal history score of six, which places him in Criminal History Category III. *See* PSR ¶ 43. With a total offense level of 35 and a Criminal History Category of III, the resulting advisory Guidelines range is 210 to 262 months' imprisonment. The applicable statutory penalty is a mandatory minimum of ten years and a maximum of life imprisonment, pursuant to 18 U.S.C. § 2422(b). *See* PSR ¶¶ 70–71.

#### A.   Applicable Law

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing

disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty,* 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States,* 551 U.S. 338, 350 (2007).

### B.     Recommended Sentence

First, with respect to the nature and circumstances of the offense, the defendant's conduct was quite serious. He deliberately exploited social media to identify and groom a vulnerable child, persuaded her to create and share sexually explicit images, and then crossed state lines to consummate the exploitation in person. This was not opportunistic or impulsive – it was calculated behavior. The deliberate use of the internet to target and manipulate a significantly younger girl magnifies the seriousness of the defendant's crime and underscores the need for a substantial custodial sentence to reflect the gravity of his actions.

With respect to the purposes of sentencing, deterrence is especially important in child exploitation cases. Offenders must understand that the internet is not a shield that permits them to prey upon children without consequences; rather, such conduct will be met with severe and certain punishment. In this case, both general and specific deterrence are critical. Mr. Asuncion's criminal history, including a prior felony conviction involving flight from police with a loaded firearm (PSR ¶ 42), demonstrates a pattern of reckless and lawless behavior that cannot be ignored. A lengthy sentence, followed by an extended term of supervised release, is necessary not only to deter others but also to protect the public from a defendant who has repeatedly shown his willingness to disregard the law and endanger others.

Nevertheless, there are reasons why a below-Guidelines sentence may be appropriate in this case. First and foremost, the victim and her family have expressed to the government that they desire finality and wish to avoid the burdens of further judicial proceedings. Their support for the recommended sentence, and their interest in avoiding additional trauma, justifies a variance from the advisory range while still imposing a substantial custodial term.

The defendant's own personal history also presents significant mitigating factors. As the presentence report details, Mr. Asuncion experienced physical abuse from his father as a child, which led to placement in foster care, where he was further victimized by sexual abuse at the hands of a school staff member. Mr. Asuncion also reported being sexually active at an abnormally young age with another foster child. PSR ¶¶ 53–54. And, Mr. Asuncion's early and sustained use of drugs and alcohol, beginning with marijuana at age 10 and escalating to cocaine, methamphetamine, and ecstasy use during adolescence, seem to have further impaired his judgment and maturity at the time of the offense. *See* PSR ¶¶ 62–63.

Mr. Asuncion has also demonstrated steps toward rehabilitation. While in custody, he earned his GED, participated in substance abuse programs, and engaged in educational courses that show a willingness to improve himself and plan for a future beyond incarceration. *See* PSR ¶ 64.

Most importantly, Mr. Asuncion accepted responsibility through his guilty plea, thereby sparing the victim the trauma of reliving events in court. Taken together, these mitigating circumstances – childhood trauma, substance abuse, rehabilitative efforts, and acceptance of responsibility – suggest that a below-Guidelines sentence would adequately satisfy the goals of sentencing under 18 U.S.C. § 3553(a), balancing accountability with recognition of Mr. Asuncion's personal history and capacity for change and the victim family's desire for closure.

//
//
//

## IV. CONCLUSION

The defendant preyed on a vulnerable child, induced her to create child sexual abuse material, and then engaged in sexual acts with her when they met in person. This is among the most serious offenses in the federal system. Yet sentencing must also account for the defendant's traumatic history, his progress toward rehabilitation, and the strong desire of the victim and her family for finality.

For these reasons, the government respectfully recommends that the Court impose a sentence of 130 months of imprisonment, followed by 20 years of supervised release with the conditions recommended by U.S. Probation.

DATED: August 20, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
CHARLES F. BISESTO
Assistant United States Attorney