JODI LINKER Cal. Bar No. 230273
Federal Public Defender
Northern District of California
CANDIS MITCHELL Cal. Bar No. 242797
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Candis_Mitchell@fd.org

Counsel for Defendant Baylon Asuncion

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **United States of America,** | **Case No.:** CR 21–460 CRB |
| Plaintiff, | **Defendant's Sentencing Memorandum** |
| v. | |
| **Kingjohn Baylon Asuncion,** | **Hearing Date:** August 27, 2025 |
| Defendant. | **Hearing Time:** 10:00 a.m. |

Defendant Kingjohn Baylon Asuncion submits this memorandum to assist the Court in fashioning an appropriate sentence. Mr. Baylon Asuncion stands convicted of coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). The defense requests a sentence of 120-months—which would represent a sentence exponentially longer than his longest custodial term to date. Mr. Baylon Asuncion is remorseful for his conduct, and fully recognizes and accepts responsibility for his poor judgment.

Probation has calculated an adjusted offense level 35, Criminal History Category III, with an

DEF.'S SENT. MEMO.
*BAYLON ASUNCION*, CR 21–460 CRB

1

advisory guideline range of 210-262 months, within Zone D.[1] Though the parties had agreed to a different set of guidelines in the plea agreement, Mr. Baylon Asuncion agrees that Probation's Guidelines calculation are technically accurate.[2] All the parties have submitted requests for downward variances in sentencing. Probation recommends a variance to a sentence of 150-months.[3] The government recommends a sentence of 130-months.[4] The defense respectfully submits that a 120-month sentence is warranted, based on: 1) the nature and circumstances of the offense; 2) the fact that the requested substantial sentence is more than sufficient to deter him and promote respect for the law; 3) Mr. Baylon Asuncion's personal history and characteristics; and 4) acceptance of responsibility.

## THE APPLICABLE 3553(A) FACTORS

1. **The nature and circumstances of the offense and the history and characteristics of the defendant;**

    Mr. Baylon Asuncion is a young man who, at the time of the conduct at issue was 23-years-old and had only just entered adulthood. The Supreme Court has repeatedly recognized that youth is a powerful mitigating factor. Although cases such as *Miller v. Alabama*, 567 U.S. 460 (2012), and *Roper v. Simmons*, 543 U.S. 551 (2005), dealt with juveniles, the scientific underpinnings of those decisions apply with equal force to young adults. Research demonstrates that the human brain continues developing well into the mid-20s, particularly in the prefrontal cortex, which is responsible for decision-making and long-term planning. At the time of the offense, he was barely in his early twenties—a stage of life during which neuroscientific and psychological studies consistently demonstrate that individuals lack full development of their cognitive faculties, particularly those governing judgment, foresight, and impulse control. Thus, while Mr. Baylon Asuncion's actions were undeniably wrong, they occurred in the context of immaturity and underdeveloped judgment, not entrenched criminality.

---

[1] *See* Presentence Report ("PSR") at 71.
[2] PSR ¶ 4.
[3] *See* PSR Sentencing Recommendation.
[4] Government Sentencing Memorandum. Dkt. 108.

DEF.'S SENT. MEMO.
*BAYLON ASUNCION*, CR 21–460 CRB

2

Equally important, Mr. Baylon Asuncion comes before this Court without a significant prior criminal history. His history primarily consists of petty offenses that resulted in less than 30 days of custody. His longest sentence to date was a 16-month sentence imposed for failing to respond on a traffic stop and fleeing when he was high on methamphetamine.[5] Notably, because of the timing of the sentence, Mr. Baylon Asuncion had yet to serve the imposed sentence. As a result, this offense is the first time that Mr. Baylon Asuncion has spent more than three months in custody.

Additionally, Mr. Baylon Asuncion does not present as an individual who has engaged in a pattern of predatory or violent conduct towards minors. To the contrary, this particular offense appears to be an aberration in his prior behavior. The absence of prior serious offenses distinguishes Mr. Baylon Asuncion from defendants whose lengthy criminal records suggest an entrenched inability to conform to the law. Instead, his record suggests that he is amenable to the possibility of deterrence and capable of rehabilitation if given the opportunity.

Mr. Baylon Asuncion enjoys the support of his father and sister who have expressed their willingness to assist him as he seeks to turn his life around. Family support is a critical factor in successful reintegration, and the presence of such a support system provides the Court with assurance that Mr. Baylon Asuncion will have the stability and accountability necessary to make a meaningful change.

Mr. Baylon Asuncion chose to not file any motions and plead guilty with plea agreement to the charge in the Indictment on March 26, 2025.[6] He fully accepts responsibility for his actions and regrets his decisions.[7] Mr. Baylon Asuncion has acknowledged his wrongdoing and accepted responsibility for his conduct. He has expressed sincere remorse, both for his actions and for the impact they have had on the victim, the victim's family, and the broader community. His acceptance of responsibility is not a perfunctory acknowledgment, but a genuine recognition of the harm caused and a desire to make amends by undergoing treatment and rehabilitation. Mr. Baylon Asuncion is requesting that the Court recognize his genuine remorse as an important indicator of his amenability

---

[5] PSR ¶ 42.
[6] PSR ¶ 3.
[7] PSR ¶ 35.

DEF.'S SENT. MEMO.
*BAYLON ASUNCION*, CR 21–460 CRB

3

to rehabilitation and as a factor that should be weighed in favor of leniency.

2. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to punish the offense; The need for the sentence imposed to afford adequate deterrence to criminal conduct; The need for the sentence imposed to protect the public from further crimes of the defendant;**

In determining what sentence would be "sufficient, but not greater than necessary" to carry out the goals of § 3553(a), this Court must consider the "nature and circumstances of the offense."[8] Mr. Baylon Asuncion does not diminish the seriousness of his misconduct. Coercion of a minor is undeniably a grave offense warranting the significant punishment Mr. Baylon Asuncion has and will receive. Mr. Baylon Asuncion is acutely aware that he committed a real crime, with a real victim.

Nonetheless, the recommended sentence is a substantial sentence for Mr. Baylon Asuncion, especially when considering the long-term collateral consequences associated with his conviction, such as registration as a sex offender. Because of his conviction, Mr. Baylon Asuncion will have continuing restrictions on his liberty—including restrictions on where he may live and work long after he leaves custody.

Most important, Mr. Baylon Asuncion does not require additional time in custody to prevent future reoccurrences. An understandable and instinctual reaction to child sex offenses is a long prison sentence. Underlying this reaction is the belief that we should put a person away—both for fear of harm to children and because the involvement of victim children makes anything less seem unjust. A ten-year sentence is long enough to accomplish those goals. Mr. Baylon Asuncion will be taken away from normal social situations and may be placed with those who lack positive social behaviors and have greater criminal inclinations.

Research shows that "when prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences, they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from

---

[8] 18 U.S.C. § 3553(a)(1).

DEF.'S SENT. MEMO.
*BAYLON ASUNCION*, CR 21–460 CRB

4

legitimate opportunities, all of which promote recidivism."[9] Mr. Baylon Asuncion's family is strongly supportive of him and remain ever at the ready to help him stay the course after he has served his custodial sentence.

To arrive at an appropriate sentence, the Court should additionally consider the previous custodial sentences imposed on Mr. Baylon Asuncion. The longest sentence Mr. Baylon Asuncion has ever been sentenced to is 2 years in prison.[10] Prior to his arrest in this case he never served more than six continuous months in custody. The difference between a sentence served of less than six months years in county jail and a 120-month federal sentence is significant and will have a long-term effect on Mr. Baylon Asuncion. It is also important to recognize that rehabilitation is best served by a sentence that balances accountability with the opportunity for reintegration. A lengthy custodial sentence risks entrenching criminality by severing ties to family and employment opportunities, whereas a more modest but still significant custodial term, coupled with supervision and treatment, maximizes the likelihood of genuine reform.

**3. The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

While both in and out of custody Mr. Baylon Asuncion would complete mental health treatment, which will help mitigate his risk of recidivism. He has already demonstrated his willingness to participate and complete programming with his completion of coursework while at Santa Rita Jail to attain his GED.[11] With appropriate conditions of supervised release—including counseling, sex offender treatment, vocational training, and educational opportunities—he can develop the skills and insight necessary to live as a law-abiding and productive member of society.

The most productive treatment for Mr. Baylon Asuncion would be found while he is able to avail himself of treatment out-of-custody. Along with treatment, risk management strategies and

---

[9] Valerie Wright, Sentencing Project, Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment 8 (2010), available at https://webpage.pace.edu/jhumbach/Crim-SentencingProject%20ReportonDeterrence.pdf.
[10] PSR ¶ 42.
[11] PSR ¶ 64.

DEF.'S SENT. MEMO.
*BAYLON ASUNCION*, CR 21–460 CRB

5

intensive supervision can be implemented to allow Mr. Baylon Asuncion to stay in the community, where he is best able to develop skills to avoid deterrence, while not risking the public's safety. The PSR has provided detailed recommendations that probation and this Court can put into place in the proposed supervised release conditions. Mr. Baylon Asuncion would benefit from: frequent meetings with supervision, polygraph interviews, psychological treatment for sexual deviation, and supervised use of electronics. These conditions, offered only while he is on supervised release, are available to best address the treatment of Mr. Baylon Asuncion.

Mr. Baylon Asuncion requires no vocational training and is interested in being productive with his time in custody by availing himself of additional education such as college courses.[12] Once released, he intends to return to work and support his family.

**4. The sentences available;**

Here, the Court may impose any sentence a maximum sentence of life imprisonment. The minimum term of supervised release that can be imposed is five years and there is the possibility of a maximum of lifetime supervised release. There is a mandatory fine of $5000 under the Justice for Victims of Trafficking Act (JVTA) of 2015 unless Mr. Baylon Asuncion is indigent.[13] There is a maximum fine of $250,000 and a special assessment of $100.

**5. The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant in the guidelines**

5.1. Mr. Baylon Asuncion's Proposed Guideline Calculations

```
Base Offense Level, USSG § 2G1.3..........................................................32
Prepubescent Minors, USSG § 2G2.1(b)(1).........................................+2
Sexual Act, USSG § 2G2.1(b)(2)(A).......................................................+2
Electronic Device, USSG § 2G2.1(b)(6) ...............................................+2

Acceptance of Responsibility, USSG § 3E1.1(a) & (b) ........................–3

Total Offense Level ................................................................................35
Criminal History Category ...................................................................III
```

---

[12] PSR ¶ 64.
[13] *See* 18 U.S.C. § 3014(a).

```
            Guideline Range ............................................210-262 months
            Mr. Baylon Asuncion's Recommendation...........................120 months
            Probation's Recommendation.................................150 months
            Governments' Recommendation ............................130 months
```

**5.2. The Court Should Adjust Downward Three Levels for Acceptance of Responsibility**

Under U.S.S.G. § 3E1.1, the Court should depart three-levels because Mr. Baylon Asuncion accepted responsibility for his involvement in the present offense as demonstrated by his guilty plea and his truthful admission of the conduct comprising the offense.

**6. The need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct**

Imposing a sentence within the Guidelines would treat Mr. Baylon Asuncion as indistinguishable from offenders whose conduct was far more egregious. Sentencing policy requires proportionality. A sentence at the low end of the range, or below, achieves this balance: it punishes the conduct, affirms the seriousness of the offense, and deters future misconduct, while recognizing the distinctions between this case and more aggravated ones.

**7. The need to provide restitution to any victims of the offense.**

The Mandatory Victims Restitution Act ("MVRA") requires courts to order restitution to victims who are "directly and proximately harmed" by a defendant's offense.[14] The government must prove by a preponderance of the evidence (1) an entity is a victim for restitution purposes and (2) the loss.[15] Although "applying the MVRA can be complex and somewhat burdensome," the statute "requires some precision when calculating restitution. Speculation and rough justice are not permitted."[16] "Where the alleged loss is not quantifiable to any degree of certainty, the government's

---

[14] 18 U.S.C. § 3663A(a)(2).
[15] *See United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008).
[16] *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013).

DEF.'S SENT. MEMO.
*BAYLON ASUNCION*, CR 21–460 CRB

7

burden has not been satisfied, and no restitution should be ordered."[17]  Here, there has been no individual requesting restitution.

Under the Justice for Victims of Trafficking Act of 2015 ("JVTA"), 18 U.S.C. § 3014(a), a "non-indigent person" convicted of possession of child pornography is subject to a $5,000 special assessment. The qualifier of "non-indigent person" distinguishes this special assessment from the general special assessment statute[18] which mandates a $100 special assessment on all defendants convicted of a felony regardless of whether they are indigent or not. "Indigent" is a legal term of art, meaning "someone who is too poor to hire a lawyer and who, upon indictment, becomes eligible to receive aid from a court-appointed attorney and a waiver of court costs."[19] As Mr. Baylon is indigent and has appointed counsel, he argues that the $5000 special assessment should not apply in his case.

## OBJECTIONS TO PROPOSED SPECIAL CONDITIONS OF SUPERVISED RELEASE

The special conditions of supervised release may be imposed only after the Court can "support its decision to impose the condition on the record with record evidence that the condition of supervised release sought to be imposed [was] necessary to accomplish one or more of the factors listed in § 3583(d)(1) and involve[d] no greater deprivation of liberty than [was] reasonably necessary."[20] Accordingly, Mr. Baylon Asuncion objects to the following proposed special conditions of supervision as not being justified to support a factor in 18 U.S.C. § 3583(d)(1) based upon the offense:

### Condition 6's Ban from Possessing or Using any Data Encryption Technique or Program Violates § 3583(d)

Probation requests imposition of a condition that Mr. Baylon Asuncion "must not possess or use any data encryption technique or program."[21] Mr. Baylon Asuncion objects to the imposition of the condition as it is overbroad and impossible to comply with because of the extensive use of data

---

[17] *Id*. (citing § 3663A(c)(3)(B)).
[18] 18 U.S.C. § 3013(a)(2)(A)
[19] *See* "Indigent Defendant," Black's Law Dictionary (10th Ed. 2014).
[20] *See United States v. Wolf Child*, 699 F.3d 1082, 1090 (9th Cir. 2012) (internal quotation marks omitted) (citing *United States v. Stoterau*, 524 F.3d 900, 1005 (9th Cir. 2008); *United States v. Weber*, 451 F.3d 552, 568 (9th Cir. 2006)).
[21] PSR at page 28.

encryption in data privacy.

Security and data privacy are ubiquitous because of the prevalence of devices and the large amount of personal data that individuals carry in phones and computers. Many smartphones such as iPhones or Android devices use a passcode to "lock" a phone when it is not in use. Many computers have a similar passcode to lock access to the device. That passcode in certain operating systems and programs automatically operates to encrypt data on the devices. Apple computers, watches, and phones have built in default encryption to safeguard user data and to verify that only trusted code and apps run on a device.[22] Encryption is not limited to hardware. Google Cloud encrypts all customer content stored at rest, with no action from the customer, using one or more encryption mechanisms.[23] The majority of in-browser password keepers all use encryption to protect saved passwords used to access websites. Thus, the condition as written would prevent Mr. Baylon Asuncion from operating any websites that require passwords, use a computer or smartphone with a passcode, or use any of the commercial cloud based applications.

This proposed condition is overbroad because Mr. Baylon Asuncion will not be able to use any modern technology as most operating systems, devices, and programs rely upon data encryption and techniques without user input and without a user being able to disable the systems in effect. The condition should be removed as Probation can achieve its goals of monitoring Mr. Baylon Asuncion's internet activities otherwise.

If the Court is inclined to impose such a condition, Mr. Baylon Asuncion requests that the proposed condition read: "You must not possess or use any data encryption technique or program with the purpose of obfuscating monitoring of unacceptable computer and internet use."

## CONCLUSION

The facts before the Court establish compelling reasons to impose a 120-month sentence, a 10-year term of supervised release and a $100 special assessment. First, just punishment will be achieved.

---

[22] *See* https://support.apple.com/guide/security/encryption-and-data-protection-overview-sece3bee0835/web
[23] *See* https://cloud.google.com/docs/security/encryption/default-encryption

DEF.'S SENT. MEMO.
*BAYLON ASUNCION*, CR 21–460 CRB

9

A 120-month sentence still reflects the seriousness of the crime and communicates that society will not tolerate this conduct. Second, deterrence will be served. For a young man with no prior history of a lengthy custodial sentence, the reality of federal prosecution, a felony conviction, and a decade long custodial sentence are powerful deterrents. There is little reason to believe that an extended sentence would enhance the deterrent effect. Third, public protection is ensured. With conditions of supervised release, including treatment and monitoring, the public will be safeguarded without the need for an unnecessarily long prison term. Finally, rehabilitation is best served by ensuring that Mr. Baylon Asuncion has the opportunity to access treatment and reintegrate into society at a stage in life when he still has the potential to build a productive future.

Dated:   August 20, 2025                Respectfully submitted,

                                        JODI LINKER
                                        Federal Public Defender
                                        Northern District of California

                                                /S
                                        CANDIS MITCHELL
                                        Assistant Federal Public Defender